In the
United States Court of Appeals
For the Seventh Circuit

No. 01-2311

In the Matter of:

Navigant Consulting, Inc., Securities
Litigation

Appeal of:

Charles L. Grimes and Gordon W. Chaplin, as
Trustees under the Will of Louise C.
Chaplin, et al.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 7617--Ruben Castillo, Judge.

Argued December 6, 2001--Decided December 26, 2001

Before Cudahy, Easterbrook, and Evans,
Circuit Judges.

Easterbrook, Circuit Judge.  Only parties
may appeal from judgments entered in
federal litigation. See Fed. R. App. P.
3; Marino v. Ortiz, 484 U.S. 301 (1988).
Because members of a class (other than
the named representatives) are not
automatically parties, they must
intervene and acquire party status if
they wish to appeal. See Felzen v.
Andreas, 134 F.3d 873 (7th Cir. 1998),
affirmed by an equally divided Court
under the name California Public
Employees' Retirement System v. Felzen,
525 U.S. 315 (1999). In this case class
members who objected to approval of the
settlement in a class action ignored that
rule and attempted to appeal without
becoming parties. After receiving a
notice from our staff that there appeared
to be a jurisdictional problem, the
objectors returned to the district court
with a motion to intervene. That motion
was denied as untimely, precipitating
this appeal from the denial of the motion
to intervene--with a conditional appeal
from the order approving the settlement.
See In re Synthroid Marketing Litigation,
264 F.3d 712, 715-16 (7th Cir. 2001).

Intervention is possible only on "timely
application". Fed. R. Civ. P. 24(a), (b).
Like the district court, we find it hard

to see how a post-judgment motion could be timely. "Hard" differs from "impossible"; United Airlines, Inc. v. McDonald, 432 U.S. 385 (1977), holds that class members are entitled to intervene even after judgment, in order to pursue an appeal, if they do not learn until after judgment of the circumstance (the representative's abandonment of the class) that calls for intervention. Everything depends on the gap between the need for action and the taking of action. Thus, we held in Crawford v. Equifax Payment Services, Inc., 201 F.3d 877, 880 (7th Cir. 2000), that "delay must be measured from the time the would-be intervenors learned (or should have known) of the representative's shortcomings." Crawford added, as did Synthroid, that intervention should be freely allowed, if limited to the purpose of taking an appeal. But this attitude cannot abolish the requirement in Rule 24 that intervention be timely.

The objectors' appellate brief in this case gives no reason for their delay in moving to intervene. Pressed at oral argument, counsel supplied one: His ignorance of Felzen and its predecessors. This may be the explanation but is not a justification. Many deadlines confront counsel, from the statute of limitations to the 30-day period for taking an appeal, and failure to inform oneself of the procedural requirements is no excuse for ignoring them. Although the district judge might have deemed the explanation sufficient, cf. Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership, 507 U.S. 380 (1993), the judge was not required to do this, and deferential appellate review of this discretionary decision can have only one outcome.

Indeed, these objectors probably should have intervened before the settlement was negotiated. The class representatives in these 21 consolidated actions alleged that Navigant Consulting violated the federal securities laws by making false statements, injuring investors in aftermarket trading. Like other actions of this sort, identifying injured traders required specifying the date when the price first was affected by the deceit and the date when the truth reached the market and the price adjusted to that news. The asserted fraud in this case was

the use of pooling to account for four of Navigant's acquisitions, although generally accepted accounting principles prohibited the use of that method under the circumstances. (Pooling has since been abolished by the accounting profession for all transactions after June 29, 2001. See Financial Accounting Standards Board, Statements 141 and 142.) Navigant first released earnings using pooling early in 1999, and before the opening of the markets on November 22 of that year it announced that its accountants had questioned this treatment, that earnings might have to be restated, and that its senior officers had resigned or been discharged. The price of Navigant's stock dropped 45% (from $26.00 to $14.25 per share) that day. The class representatives sought recovery for investors who bought stock during 1999 before this disclosure and the precipitous decline. The objectors believe, however, that purchasers through January 24, 2000, when Navigant released its restated earnings, should be included in the class--even though the market rose when the restated earnings were announced. (The announcement on November 22 did not reveal the extent of the loss, and traders may well have assumed that if there were any good news this would have been stated. See Sanford J. Grossman, The Informational Role of Warranties and Private Disclosure About Product Quality, 24 J. L. & Econ. 461 (1981); Paul Milgrom & John Roberts, Relying on the Information of Interested Parties, 17 Rand J. Econ. 18 (1986). Not until January 2000 was the loss quantified, and because the worst had not come to pass the price rose.)

By August 2000 the objectors knew that the damages period proposed by the class representatives would close in November 1999, omitting some of their trades. That was the time to seek intervention, but the objectors did not. Instead they filed another class action in September 2000, naming themselves as representatives, and sought to have this twenty-second suit consolidated with those already under way. The district court denied this motion. Denied this self-help role, the objectors then could have sought intervention or opted out and relied on their own class suit. But they did neither, waiting until May 4, 2001, to get the intervention process started. The district judge acted within his

discretion in finding that this was too late for persons who had known for at least eight months about the aspects of the representatives' position to which they objected.

Anticipating that we might reach this conclusion, the objectors ask us to overrule Felzen and permit appeals by class members that have not become formal parties. That decision is not a candidate for reconsideration. The circuits are in conflict and will be no matter what we do. The ball is in another Court, which has indicated an inclination to take a new look at the subject. See Scardelletti v. Debarr, 265 F.3d 195 (4th Cir.), cert. granted under the name Devlin v. Scardelletti, No. 01-417 (2001 U.S. Lexis 10959 Dec. 10, 2001). That is the right forum for further debate.

Still, we cannot resist a few comments. Although other circuits see the question as one for policymaking by judges--the divided opinion in Scardelletti is a good example, with both the majority and the separate opinion explaining why in their view sound practice calls for one or another outcome--this court in Felzen took a more formal position. Appellate Rule 3 limits appeals to parties, and in Marino the Supreme Court enforced that requirement. Class members (other than the representatives) are not parties; if they were, their citizenship would count for purposes of the complete-diversityrequirement in suits under 28 U.S.C. sec.1332, yet it is established that class members' citizenship is disregarded. See Smith v. Sperling, 354 U.S. 91 (1957). Class members cannot have it both ways, being non-parties (so that more cases can come to federal court) but still having a party's ability to litigate independently.

Although several decisions (again Scardelletti is a good example) discuss the problem as if the question were whether class members have "standing" to appeal, we do not think that this is apt. Class members suffer injury in fact if a faulty settlement is approved, and that injury may be redressed if the court of appeals reverses. What more is needed for standing? See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). Our point in Felzen was that parties are a subset of persons with standing. It is

not enough to suffer injury; one must become a litigant by taking the necessary formal steps (such as filing a timely complaint, or here filing a timely motion to intervene and then a timely notice of appeal).

Observance of form has benefits, such as a reduction in uncertainty and the costs that uncertainty breeds. Intervention identifies with precision who is entitled to take what procedural steps, and when. It also may facilitate accurate decision on the merits. Our case shows how. The objectors say that because of fraud the price of Navigant's stock remained too high in the period between November 22, 1999, and January 24, 2000, and that investors who bought during these months should be entitled to a portion of the recovery. Intervention would have allowed the court to explore that question: the class representatives and Navigant could have taken discovery from the objectors to learn just what trades they made, how these may have been influenced by lack of information in the market, and so on. Intervention and extra discovery might have led the judge to obtain the views of an expert in financial economics. But by remaining on the sidelines until after final decision in the district court, these objectors hobbled that inquiry and made the appeal a needlessly speculative venture.

By insisting on party status of appellants, then, we facilitate adjudication in district courts too. As we stressed in Crawford and Synthroid, it is vital that district courts use this formal rule to promote vindication of the class members' rights; that's why we insist that timely requests to intervene be freely granted. But these objectors tarried when their own deeds (especially their separate lawsuit) demonstrate that they understood the need for action.

The order denying the motion to intervene is affirmed, and the conditional appeal from the order approving the settlement is dismissed for want of jurisdiction.